**ORAL ARGUMENT NOT YET SCHEDULED**

No. 25-5105

_____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

SARA AVIEL, in her personal capacity and in her official capacity as President of the Inter-American Foundation

*Plaintiff-Appellee*,

v.

SERGIO GOR, in his official capacity as the Director of the White House Presidential Personnel Office, et al.,

*Defendants-Appellants*.

_____

On Appeal from the United States District Court for the District of Columbia
No. 25-cv-00778-LLA, The Honorable Loren L. AliKhan, District Judge

_____

## PLAINTIFF-APPELLEE'S OPPOSITION TO
## MOTION FOR A STAY PENDING APPEAL

_____

AARON S.J. ZELINSKY
   *Counsel of Record*
ZUCKERMAN SPAEDER. LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
Telephone:  (410) 332-0444
Fax:  (410) 659-0436

AARON CHOU
ZUCKERMAN SPAEDER. LLP
2100 L Street NW, Suite 400
Washington, DC 20037
Telephone:  (202) 778-1800
Fax:  (202) 822-8106

*Counsel for Plaintiff-Appellee*
*Sara Aviel*

April 14, 2025

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), Appellee Sara Aviel ("Aviel") certifies as follows:

**A.    Parties and *Amici***

All parties, intervenors, and *amici* appearing before the District Court and in this Court are listed in the motion for a stay filed by Appellants.

**B.    Ruling Under Review**

Appellants' motion for a stay identifies the ruling at issue.

**C.    Related Cases**

This case has not previously been before this Court. *Cristosal Human Rights, et al. v. Marocco, et al.*, No. 25-cv-00857 (D.D.C.), was filed as a related case with substantially the same parties and the same or similar issues.

## TABLE OF CONTENTS

**Page**

**INTRODUCTION**................................................................................1

**STATEMENT OF THE CASE**..........................................................2

**STANDARD OF REVIEW** ...............................................................4

**ARGUMENT** ......................................................................................5

I.    THE GOVERNMENT IS UNLIKELY TO PREVAIL ON THE
      MERITS..........................................................................................5

II.   THE GOVERNMENT HAS NOT SHOWN IRREPARABLE
      INJURY. ......................................................................................17

III.  THE REMAINING FACTORS COUNSEL AGAINST A STAY...............20

**CONCLUSION**..................................................................................22

# TABLE OF AUTHORITIES

**CASES**                                                                                                         <u>**Pages**</u>

*Cobell v. Kempthorne*,

    455 F.3d 317 (D.C. Cir. 2006) .............................................................................16

*Dellinger v. Bessent*,

    No. 25-5028, 2025 WL 559669 (D.C. Cir. Feb. 15, 2015) (per curiam)...... 16, 18

*Does 1-3 v. Mills*,

    142 S. Ct. 17 (2021) ...............................................................................................5

*Flynn v. C.I.R.*,

    269 F.3d 1064 (D.C. Cir. 2001) .........................................................................16

\* *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,

    561 U.S. 477 (2010) ................................................................................. 5, 18, 19

*Freytag v. Comm'r of Internal Revenue*,

    501 U.S. 868 (1991) ..........................................................................................7, 10

*Harris v. Bessent*,

    No. 25-5055, 2025 WL 980278 (D.C. Cir. Mar. 6, 2025) ..................................20

*In re Sawyer*,

    124 U.S. 200 (1888) ............................................................................................17

*KalshiEX LLC v. CFTC*,

    119 F.4th 58 (D.C. Cir. 2024) ..........................................................................1, 4

*League of Women Voters of the U.S. v. Newby*,

    838 F.3d 1 (D.C. Cir. 2016) ...............................................................................21

*Nat'l Treasury Emps. Union v. Reagan*,

    663 F.2d 239 (D.C. Cir. 1981). ............................................................................5

*Nken v. Holder*,

    556 U.S. 418 (2009) ...................................................................4, 17

*Noel Canning v. NLRB*,

    705 F.3d 490 (D.C. Cir. 2013) ...........................................................19

*NLRB v. Noel Canning*,

    573 U.S. 513 (2014) ...................................................................7, 19

* *NLRB v. SW Gen., Inc.*,

    580 U.S. 288 (2017) ................................................................. 7, 8, 9

* *Sampson v. Murray*,

    415 U.S. 61 (1974) ................................................................ 17, 21

*Severino v. Biden*,

    71 F.4th 1038 (D.C. Cir. 2023) ...........................................................17

*Swan v. Clinton*,

    100 F.3d 973 (D.C. Cir. 1996) ...........................................................17

*United States v. Arthrex, Inc.*,

    594 U.S. 1 (2021) .........................................................................11

*U.S. ex rel. Polansky v. Exec. Health Res., Inc.*,

    599 U.S. 419 (2023) ......................................................................15

*Vitarelli v. Seaton*,

    359 U.S. 535 (1959) ......................................................................17

*Williams v. Phillips*,

    482 F.2d 669 (D.C. Cir. 1973) .................................................... 12, 13

*Youngstown Sheet & Tube Co. v. Sawyer*,

    343 U.S. 579 (1952) ......................................................................14

*Zivotofsky ex rel. Zivotofsky v. Kerry*,

576 U.S. 1 (2015) ...................................................................................13

## STATUTES

22 U.S.C. § 290f .......................................................................... 2, 3, 5, 8

5 U.S.C. § 3345 .......................................................................... 8, 13, 15

5 U.S.C. § 3347 .......................................................................... 8, 13, 14

5 U.S.C. § 3348 ................................................................................8, 14

5 U.S.C. § 3349c ..............................................................................8, 14

## LEGISLATIVE MATERIALS

Pub. L. 91-175, 83 Stat. 805 (1969) .........................................................2

Pub. L. No. 118-47, § 7063(a), Div. F. tit. III, 138 Stat. 460 (2024) .................3, 22

## CONSTITUTION

U.S. Const. Art. II, § 2, cl. 2 ...................................................................11

## OTHER AUTHORITIES

Office of Legal Counsel, *Authority of the President to Remove the Staff Director of the Civil Rights Commission and Appoint an Acting Staff Director*, 25 Op. O.L.C. 103 (2001) .................................................................................12

Office of Legal Counsel, *Memorandum for Attorneys of the Office* (July 16, 2010), https://www.justice.gov/olc/page/file/1511836/dl.............................................12

iv

**INTRODUCTION**

The President unlawfully fired Plaintiff-Appellee Sara Aviel, an inferior officer of the United States, contrary to well-established precedent that the government does not challenge here.  In parallel, the President fired the entire Board of the IAF.  Then, he unlawfully appointed Peter Marocco as the sole acting member of the IAF Board.  That same day, Marocco purported to again fire Aviel (this time in secret, without ever notifying her), and appointed himself president of the IAF. Marocco then commenced the destruction of the IAF, cancelling all but one of the IAF's grants and seeking to terminate every employee but one.  These actions were all contrary to laws passed by Congress and signed by the President.

Aviel has consistently sought to implement the policy priorities of this Administration.  She shares the President's concern about making government more efficient.  She has worked to align the IAF with the Administration's policy priorities, including with respect to addressing migration and countering violence and international narcotics trafficking throughout Latin America.  She seeks only to follow the law.

The government now seeks the "extraordinary remedy" of a "stay pending appeal," *KalshiEX LLC v. CFTC*, 119 F.4th 58, 63 (D.C. Cir. 2024) (quotation marks omitted), and asks this Court to ignore binding Supreme Court precedent.  The government has not met this stringent criteria for exceptional relief.  If the President

wished to fire Aviel, there was clear and lawful means to do so: direct the Board to fire her. He did not. Now he complains he cannot terminate Aviel, a problem completely of his own making. The President's power does not expand merely because he has terminated various officials. Indeed, even now there is a clear constitutional path to fire Aviel: appoint and confirm Board members, as the Constitution and the law requires.

Make no mistake: the government's radical theory would upend the law, allowing the President to potentially stock every multimember board in government with acting officials who have bypassed Senate-confirmation requirements.

There is a time for emergency relief. This case—flying in the clear face of the text, history, and structure of the Constitution—isn't it.

## STATEMENT OF THE CASE

### A.    Legal Background

Congress established the Inter-American Foundation in 1969 as a "body corporate." Pub. L. 91-175, 83 Stat. 805, 821-24 (1969). Through the IAF's legislation, 22 U.S.C. § 290f *et seq.*, Congress specified that the IAF "shall have perpetual succession unless sooner dissolved by an Act of Congress," 22 U.S.C. § 290f(e)(1). The management of the IAF is vested in a bipartisan board of directors, composed of "nine members appointed by the President, by and with the advice and consent of the Senate," of which no more than five members may belong to any one

political party.  22 U.S.C. § 290f(g).  New members of the Board serve six years, and "upon the expiration of his term of office a member shall continue to serve until his successor is appointed and shall have qualified."  *Id.*  "The Board shall direct the exercise of all the powers of the Foundation."  22 U.S.C. § 290f(i).

The Board of the IAF manages the entity through the appointment of a president who serves as the IAF's CEO.  22 U.S.C. § 290f(*l*)(1).  The Board determines the terms of the President's appointment.  *Id.*

Congress has directed that the IAF may not use appropriated funds "to implement a reorganization, redesign, or other plan" to "expand, eliminate, consolidate, or downsize" the agency without first consulting with Congressional appropriations committees, and providing the committees with a detailed justification for any such plan.  Further Consolidated Appropriations Act of 2024, Pub. L. No. 118-47, § 7063(a), Div. F. tit. III, 138 Stat. 460, 843-44 (2024).

### B.    Procedural History

Aviel was lawfully appointed by the IAF Board to be the president and CEO of the agency, effective April 24, 2022, serving an indefinite term at the discretion of the Board.

On February 26, 2025, Aviel received an email from Trent Morse of the Presidential Personnel Office informing her that President Trump had terminated her, effective immediately.  On March 17, 2025, Aviel filed this action, seeking a

temporary restraining order and preliminary injunction.  D. Ct. ECF Nos. 1, 5.  On April 2, 2025, the Court held a hearing on the motion and stated it would rule by April 4, because all but one employee of the IAF was scheduled to be terminated by midnight that day.  On April 4, 2025, the District Court preliminarily enjoined Defendants from removing Aviel from her position as president of the IAF and obstructing her ability to carry out her duties, absent a decision by the lawfully-constituted IAF.  D. Ct. ECF No. 23.  In addition, the District Court enjoined Marocco from serving as an "acting" Board member of the IAF and ordered that all future appointments to the Board be made consistent with the Constitution's Appointments Clause.  On April 6, 2025, Defendants noticed an appeal to this Court and moved before the District Court for a stay of the preliminary injunction, which the District Court denied.  D. Ct. ECF No. 34.  On April 7, 2025, Defendants filed a motion to stay the injunction pending appeal in this Court.

## STANDARD OF REVIEW

A stay pending appeal is an "extraordinary remedy," *KalshiEX*, 119 F.4th at 63 (quotation marks omitted), intruding "into the ordinary processes of administration and judicial review," *Nken v. Holder*, 556 U.S. 418, 427 (2009) (quotation marks omitted).  The movant must show (1) a "strong" likelihood of success, (2) irreparable injury, (3) that a stay will not "substantially injure the other parties," and (4) that the public interest favors a stay.  *Id.* at 426.  Courts should be

4

wary of litigants using requests for "extraordinary relief" to decide the "merits" "on a short fuse." *Does 1-3 v. Mills*, 142 S. Ct. 17, 18 (2021) (Barrett, J., concurring).[1]

## ARGUMENT

## I.   THE GOVERNMENT IS UNLIKELY TO PREVAIL ON THE MERITS.

### A.   The parties agree that the President unlawfully fired Aviel.

The District Court properly held—*and Defendants have never contested*—that the President's firing of Aviel on April 26, 2025, was unlawful.  *See Aviel v. Gor*, 2025 WL 1009035, at *6-7; *cf.* Mot. 6 (not challenging the February 26 firing). There is no dispute: on February 26, 2025, the Board, and only the Board, "retain[ed] the authority to hire and fire the IAF's president." *Aviel*, 2025 WL 1009035, at *6 (citing *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 509 (2010)).

Congress explicitly gave the Board the power to appoint the IAF president. 22 U.S.C. § 290f(*l*)(1).  "Absent relevant legislation" stating otherwise, "the power to remove is held . . . only by the appointing authority." *Nat'l Treasury Emps. Union v. Reagan*, 663 F.2d 239, 247 (D.C. Cir. 1981).  Accordingly, Aviel may be removed from her position only by her "principal officer": the Board.

---

[1] The District Court has set an expedited schedule for merits briefing, so there will likely be a more complete record and opportunity to fully brief and consider these issues in short order.  *See* D. Ct. Minute Order, April 10, 2025.

The government acknowledges as much, *see* Mot. 19, but tries to obscure the issue by arguing that if the President cannot appoint Marocco as an acting Board member, then the President must now have the authority to fire Aviel himself—implicitly suggesting that the President sought to terminate Aviel as a backstop after Marocco sought to do the same. *See* Mot. 19-20. But this skews the timeline: Aviel *first* received an email on February 26 from Morse, informing her that President Trump had terminated her from her position, effectively immediately.

There is no question that the President fired Aviel on February 26, 2025, contrary to the law. Defendants do not argue otherwise. On that issue alone, Aviel will succeed on the merits.

**B.      The President must appoint Board members through the process mandated by the law and Constitution.**

**1.**      One hour before the District Court's April 2nd hearing in this matter, Defendants filed a notice purporting to show minutes of a "Board meeting" that Marocco held on February 28, 2025. D. Ct. ECF No. 21-1. These "minutes" had previously been redacted when published in the Federal Register. *Compare* D. Ct. ECF No. 21-1 at 1, *with* D. Ct. ECF No. 20-4. Despite the information contained in these "minutes," Aviel's final Earnings Statement *issued by the government* shows her pay only through February 26, 2025. *See* D. Ct. ECF No. 20-2. And Aviel's formal Notice of Personnel Action likewise stated that she was terminated February 26. D. Ct. ECF No. 20-1 ¶ 3. Thus, it appears that the government has taken the

6

consistent position that the President terminated Aviel on February 26. If that is so, that is the end of the analysis. Out of an abundance of caution, Aviel proceeds as the District Court did, considering also Defendants' argument regarding the second, previously-secret termination by Marocco in his purported capacity as acting Board member of the IAF.

**2.** The Appointments Clause forecloses a Presidential power to unilaterally appoint principal officers of the United States, "dividing" that power "between the Executive and Legislative Branches." *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 884 (1991). "The Senate's advice and consent power is a critical structural safeguard [] of the constitutional scheme." *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 293-94 (2017) (cleaned up). To be sure, Congress recognized that the process of nomination and Senate confirmation "can take time," and that in some instances neither the President nor the Senate "may desire to see the duties of the vacant office go unperformed in the interim." *Id.* Accordingly, "Congress has given the President *limited authority* to appoint acting officials to temporarily perform the functions of a vacant [principal] office without first obtaining Senate approval." *Id.* at 294 (emphasis added). Yet even this grant of limited authority is a departure from the constitutional "norm." *NLRB v. Noel Canning,* 573 U.S. 513, 523 (2014).

**3.** Congress implemented this limited authority to appoint acting officials primarily through the Federal Vacancies Reform Act ("FVRA"), 5 U.S.C. § 3345 *et*

*seq. See SW Gen.,* 580 U.S. at 293-94.  These provisions "are the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency . . . for which appointment is required to be made by the President, by and with the advice and consent of the Senate," unless another "statutory provision expressly" authorizes the appointment of an acting official, or the President validly makes a recess appointment.  5 U.S.C. § 3347(a).

The FVRA explicitly does not extend this limited grant of appointment authority to vacancies arising in boards "composed of multiple members" and boards that control a "Government corporation."  5 U.S.C. § 3349c(1).  All agree that the IAF is such an entity.  *See* Mot. 14.  And no provision in the IAF's organic statute (or any other source of law) grants the President the power to appoint acting Board members.  Instead, the IAF's statute states that Board members must be nominated by the President and confirmed by the Senate.  22 U.S.C. § 290f(g).  Accordingly, the FVRA does not grant the President the authority to appoint acting members to the Board of the IAF.

Because neither the FVRA nor any other provision of law contemplates the possibility of acting Board members, any vacancy in the Board of IAF "shall remain vacant," 5 U.S.C. § 3348(b)(1), until such time as the position is filled through Senate confirmation.  And the FVRA clearly states that any action taken by a person

8

who purports to be an acting member of the Board "shall have no force or effect" and "may not be ratified," 5 U.S.C. § 3348(d)(1)-(2).

**4.**      At its core, the government's merits argument is an attempt to circumvent the FVRA.  The government argues that the Constitution grants the President broad authority to name acting officials—thus bypassing the Senate and violating the FVRA—because it is the President's responsibility to keep executive branch agencies filled and in operation.  Mot. 13.  This argument "asserts a broad, heretofore unrecognized expansion of Executive power that would eviscerate key parts of the Constitution."  *Aviel*, 2025 WL 1009035, at *8.  The District Court properly described the logical extension of these arguments as "frightening."  *Id.* at *9.  Although "the burdens on governmental processes that the Appointments Clause imposes may often seem clumsy, inefficient, even unworkable," "the Appointments Clause is not an empty formality."  *SW Gen.*, 580 U.S. at 316-17 (Thomas, J., concurring) (quotation marks omitted).  The Framers recognized "the serious risk for abuse and corruption posed by permitting one person to fill every office in the Government."  *Id.*  "They thus empowered the Senate to confirm principal officers on the view that 'the necessity of its co-operation in the business of appointments will be a considerable and salutary restraint upon the conduct of' the President."  *Id.* (quoting The Federalist No. 76, at 514).  But the government now asks the Court to

9

"cast aside the separation of powers and the Appointments Clause's important check on executive power for the sake of administrative convenience or efficiency." *Id.*

The District Court placed its finger on the pulse of this issue, extensively questioning the government and noting the lack of any "limiting principle" in the government's position. *Aviel*, 2025 WL 1009035, at *9. If the government is right that the President holds unbridled authority to fill any principal vacancy with an acting official—and if the FVRA's time limits do not apply, as the government claims—then the President could appoint an "acting" Board member indefinitely without ever needing to seek the advice and consent of the Senate. In addressing the Court's analysis, the government still cannot provide a coherent limiting principal. Mot. 18-19. Such a scheme is exactly what the Founders warned against, and why they crafted the Appointments Clause.

Indeed, the government was clear below about the scope of this proposed power, stating that the acting appointment could continue into "the foreseeable future," and refusing to "comment on when it ceases to exist." D. Ct. Hr'g Tr. 55:15, 55:25, April 2, 2025. This risks creating exactly the "insidious and powerful weapon of . . . despotism" the Court warned against in *Freytag*. 501 U.S. at 883 (quotation marks omitted).

5.    There is also no basis in the Constitution for the President to arrogate such an appointment power to himself. That power cannot derive from the

10

Appointments Clause, which the government emphasizes allows the President to be "assisted in carrying out" his duties "by officers nominated by him and confirmed by the Senate, as well as by other officers not appointed in that manner but whose work . . . must be directed and supervised by an officer who has been." *United States v. Arthrex, Inc.*, 594 U.S. 1, 6 (2021) (cited at Mot. 7). That passage is entirely *consistent* with having both Board members nominated and confirmed, and an inferior officer like Aviel, directed and supervised by the Board. It is the government's reading that fails to comport with the Appointments Clause: if the President could avoid nomination and confirmation completely by naming acting Board members, he could avoid his constitutional mandate entirely. *See* U.S. Const. Art. II, § 2, cl. 2.

Nor do Article II's background principals provide the President's ability to name acting Board members, as the government contends (at 10-13). The District Court observed that the government could cite no binding legal authority in support of this position, because none exists. The government's motion does not meaningfully change tact. It again cites the OLC opinion issued on March 14, 2025—just before Aviel's lawsuit was filed (and after a similar case, *Brehm v. Marocco*, had been filed). Even if the government is right that the March 14 opinion "reiterates longstanding [] views" (Mot. 17 n.3), that does not change the fact that the opinion was issued during the *Brehm* litigation, contravening the OLC's well-

11

settled prudential policy against issuing such opinions during "pending or imminent litigation." *See Mem. for Att'ys of the Off.* (July 16, 2010), https://www.justice.gov/olc/page/file/1511836/dl.   Moreover, the OLC opinion merely echoes the rejected Article II absolutism reflected in the government's briefing and properly rejected by the District Court.  The government's reliance on other OLC opinions does not move the needle either; no court has ever endorsed the sweeping power grab the government now proposes.[2]

The lone authority that the government now cites, *Williams v. Phillips*, 482 F.2d 669 (D.C. Cir. 1973), actually supports Aviel.  This two-page, fifty-year-old per curiam opinion in no way approved of the power of the President to make an acting appointment without statutory authority.  Instead, the *Williams* Court noted only that "[i]t could be argued" the Take Care Clause provided the implied power that the government argues exists here.  *Id.* at 670.  Far from adopting the argument,

---

[2] For example, *Authority of President to Remove Staff Director of Civil Rights Commission* (cited at Mot. 10) explicitly acknowledged that "[n]o court has ever recognized that the President has such inherent authority."  25 Op. O.L.C. 103, 105 (2001) (quoting *George v. Ishimaru*, 1994 WL 517746 (D.C. Cir. Aug. 25, 1994)). That remains true, and this Court should not be the first, particularly not in the posture of a stay motion.

Furthermore, that opinion concerned the Presidential power of appointment of an inferior officer where Congress had granted the President authority to appoint a person to that position permanently.  There is no dispute that the members of the Board of the IAF are principal officers, and Congress has expressly withheld authority from the President to appoint acting members to that body.

the court expressed skepticism and explicitly cabined its holding, explaining that "*[e]ven if* the court should sustain such a view . . . that would not establish that the President" was entitled to name an acting official in that circumstance. *Id.* (emphasis added).

But there is a much bigger problem with *Williams*: *that case was decided decades before the modern FVRA was passed*. In 1973, there was no law stating that the then-existing Vacancies Act was the "exclusive means" for the appointment of acting officials. *Compare* 5 U.S.C. § 3347 (1973), *with* 5 U.S.C. § 3347 (effective 2004). Nor were there any provisions in 1973 stating that any action taken by individuals who were not acting under the FVRA "shall have no force or effect," or providing a carve-out explicitly exempting multimember boards from acting appointments, as the statute does today. *Compare with* 5 U.S.C. § 3345 *et seq.* (1973).

That is why even the recently-created OLC memo does not mention *Williams*: the case is a complete red herring, decided before Congress had spoken to the issue. In 1973, one might hypothesize that with Congressional silence on the matter (or perhaps implicit Congressional acquiescence), the President was operating in *Youngstown*'s first or second categories. *See Zivotofsky ex rel. Zivotofsky v. Kerry,* 576 U.S. 1, 10 (2015). But in 2025, when Congress has clearly spoken to the issue, there is no question the President is operating in *Youngstown*'s third category, where

his power is at its "lowest ebb." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring). *Williams* offers the government no succor.

The government's interpretation of Article II is also internally inconsistent. If the President had such expansive power under Article II to name acting officials who can carry out the full duties of a covered Senate-confirmed position when it is vacant, the FVRA would violate the Constitution, as it would intrude on the President's Article II power. And such a power would render the Recess Appointments Clause surplusage, because the President could make indefinite acting appointments whenever he pleased.

**6.** The government's interpretation of the FVRA—that its non-applicability to the IAF (through Section 3349c) means the IAF falls entirely out of the statute's scope—misconstrues Aviel's argument (and the District Court's decision) and the text of the FVRA. First, Congress has specified that the FVRA provides the "exclusive means" for the appointment of acting officials in the absence of Senate confirmation. 5 U.S.C. § 3347(a). That clear text goes unaddressed in the government's motion.

Moreover, the government's selective embrace of Section 3349c ignores that Section 3348(d)(1), which invalidates actions by improperly appointed officers, expressly encompasses "vacant office[s] to which . . . [Section] 3349c

14

appl[ies]." 5 U.S.C. § 3348(d)(1).  The government tries to sidestep this by arguing that the "cross-reference" to Section 3349c merely clarifies that the FVRA applies to other offices not "subject to the carve-out" for multimember boards.  Mot. 16. This is a strained reading that needlessly places provisions of the FVRA "at war with itself."  *U.S. ex rel. Polansky v. Exec. Health Res., Inc.,* 599 U.S. 419, 434 (2023). For one, Section 3348(d)(1) refers to sections other than Section 3349c as sections providing for "a vacant office" that would "hav[e] no force or effect" in the absence of a proper appointment.  And Sections 3348(d)(1)'s operative phrase is "[a]n action taken by any person who is not acting under section 3345, 3346, or 3347," such that the reference to section 3349c is confirmatory, and the provisions apply in harmony.

\*    \*    \*

In the absence of a grant of authority from Congress to appoint an acting member of the IAF Board, the President lacked the authority to appoint Marocco to that Board.  And because Marocco has not been validly appointed as an acting member of the Board, any actions he took or intends to take in that capacity were properly treated as void and as without effect.

## C.    The District Court properly exercised its equitable power.

The government pushes on to argue that the District Court did not have the equitable power to reinstate Aviel because "appointment and removal of the

Foundation's president is specifically entrusted to the Executive." Mot. 21.[3] But that is wrong. The President is *not* entrusted with hiring or firing the IAF President; the IAF Board is. That fact distinguishes this case from other recent cases where this Circuit has confronted an injunction that directed the President to work with an official whom "he has [] removed." *See Dellinger v. Bessent*, No. 25-5028, 2025 WL 559669, at *16 (D.C. Cir. Feb. 15, 2015) (Katsas, J., dissenting). That is not at issue here. Granting injunctive relief for Aviel does not require a *de jure* presidential "re-appointment," since she was never presidentially appointed in the first place. The government concedes as much. *See* Mot. 22 (asking the court to apply principles from other cases to "here, [where] relief is directed to the President's subordinate officers").

Even if the Court were to review this case like others seeking reinstatement of an officer appointed by the President, the government's staggering argument— that Article III courts are powerless to remedy the executive violating the Appointments Clause and the FVRA—still fails. This Court has repeatedly and

---

[3] Setting aside its merits, this argument is newly-raised. The government below never challenged the court's authority to order the remedies sought by Aviel. "Generally, an argument not made in the lower tribunal is deemed forfeited and will not be entertained absent exceptional circumstances." *Flynn v. C.I.R.*, 269 F.3d 1064, 1068-69 (D.C. Cir. 2001) (quotation marks omitted). This applies to challenges to the district court's authority to issue certain orders. *See Cobell v. Kempthorne*, 455 F.3d 317, 323 (D.C. Cir. 2006).

recently recognized that courts may "enjoin 'subordinate executive officials' to reinstate a wrongly terminated official." *Severino v. Biden*, 71 F.4th 1038, 1042-1043 (D.C. Cir. 2023) (quoting *Swan v. Clinton*, 100 F.3d 973, 980 (D.C. Cir. 1996)); *see also Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974) (explaining that courts may use their "injunctive power" to remedy an unlawful removal in an "extraordinary situation"); *Vitarelli v. Seaton*, 359 U.S. 535, 546 (1959) (holding that wrongfully terminated official seeking declaratory judgment and an injunction was "entitled to the reinstatement which he seeks"). Under the government's preeminent theory, Marocco acted as a subordinate officer in firing Aviel. His actions were those the District Court enjoined, and the government concedes that "here, relief is directed to the President's subordinate officers," Mot. 22. This Court could stop there and reject the government's stay application.[4]

## II.    THE GOVERNMENT HAS NOT SHOWN IRREPARABLE INJURY.

To receive a stay, the movant must show that it will be "irreparably injured absent a stay." *Nken*, 556 U.S. at 426. Defendants have not done so here.

---

[4] Aviel further explained to the District Court that should it conclude a preliminary injunction was not available, the District Court could grant the requested relief via mandamus. D. Ct. ECF No. 20 at 17 n.5. The government did not challenge the available remedies, so the District Court had no occasion to consider mandamus. All the same, the District Court had jurisdiction to "determine the title to a public office . . . either by *certiorari*, error, appeal, or by *mandamus*, prohibition, *quo warranto*, or information in the nature of a writ of *quo warranto*." *In re Sawyer*, 124 U.S. 200, 212 (1888).

Defendants argue that there is irreparable harm when an official is granted "executive power over the President's objection and freed from any oversight or control."  Mot. 27 (citing *Dellinger*, 2025 WL 559669, at *16 (Katsas J., dissenting)).  But this case is clearly distinguishable from *Dellinger*.  First, Judge Katsas explicitly stated in *Dellinger* that (unlike Aviel) "the Special Counsel is not an inferior officer."  *Id.* at *15.  Thus, the logic of *Dellinger* clearly does not apply.  Likewise, Aviel, an inferior officer, reports to a multimember board, and is not "the sole head of an agency" who "only the President may remove."  *Dellinger*, 2025 WL 559669, at *15.  An inferior officer like Aviel does not necessarily exercise the same degree of power as a principal officer like Dellinger.  What's more, the office of president of the IAF is not a "relatively new creation whose constitutionality has been questioned since its inception."  *Id.*  Just the opposite; the position of IAF president has a pedigree spanning many decades with no questions ever made to the constitutional authority of the office.  *See* Mot. 7.

Defendants make much of the fact that "a person the President has chosen to remove from office is exercising executive power . . . in the face of his objection."  Mot. 24.  But that could be true for *every* inferior officer who is appointed by a principal officer.  If the President wishes to fire an inferior officer, he must *always* order the principal officer to do so unless the statute allows otherwise.  *See Free Enter. Fund*, 561 U.S. at 509.  The real question is whether the President may

*enlarge* his power by firing principal officers (and there is no evidence in the record the President even directed the principal officers—here, the Board—to fire Aviel). If the President may circumvent removal requirements in this manner, what would be the purpose of creating inferior officers protected from direct removal by the President?  Such a holding would eviscerate completely the Court's reasoning in *Free Enterprise Fund*.

In addition, the Court should not lose sight of the fact that the only reason no Board is left to supervise Aviel is because the President fired them.  The act of firing principal officers by statute (whom Congress provided could remain in office until their successors were confirmed, *see Noel Canning v. NLRB*, 705 F.3d 490, 511 (D.C. Cir. 2013), *aff'd*, 573 U.S. 513 (2014)) does not enlarge the President's constitutional power to fire inferior officers.  The President should not be allowed to claim irreparable harm from his own self-inflicted wound.  And there is an easy solution to this problem the President (and only the President) has created: he can follow the constitutional "norm" of advice and consent for the IAF Board.  *Noel Canning*, 573 U.S. at 523.  That is not an irreparable harm to the President; it is how the Founders intended the Constitution to function.

Indeed, the expansive logic of the Government's position here, combined with the sweeping removal powers it has argued for in *Harris v. Bessent*, No. 25-5055, 2025 WL 980278 (D.C. Cir. Mar. 6, 2025), present precisely the "frightening"

situation the District Court warned of, *Aviel*, 2025 WL 1009035, at *9. In *Harris*, the government argues that the President may remove any person from a multimember Board for any reason whatsoever. Appellants' Mot. for Stay at 10-17, *Harris*, No. 25-5055 (D.C. Cir. Mar. 6, 2025). Here, the President argues he may *appoint* any person in an acting capacity to any multimember board for an indefinite period. Put together, the government's theory would allow the President to fire anyone he wanted and appoint anyone as an acting board member indefinitely. The President could fire the entire Federal Reserve Board tomorrow and appoint acting members for the next-nearly-four years. The SEC, CFTC, FCC, FERC, NRC, and a host of other multimember agencies could be gutted tomorrow and replaced with acting board members. This Court should not make such a sweeping change via a stay order.

## III.   THE REMAINING FACTORS COUNSEL AGAINST A STAY.

There is no question that a stay would "substantially injure" Aviel. *See Nken*, 556 U.S. at 426. The District Court properly found that Aviel would be subject to irreparable injury (a higher standard) in granting the preliminary injunction. *See Aviel*, 2025 WL 1009035, at *9-11. But rather than engage with the District Court's analysis, Defendants seek to dismiss it out of hand by merely reasserting that Aviel is comparable to a mere employee, Mot. 22, an argument the District Court carefully considered and rejected.

Defendants do not engage at all with the fact that Aviel has a statutory right to function.  *See Aviel*. 2025 WL 1009035, at *10.  What's more, as the District Court properly held, this constitutes the "genuinely extraordinary situation" contemplated by *Sampson*, 415 U.S. at 92 n.68, because the organization of which Aviel is the president will otherwise be reduced to a "pile of rubble."  *Aviel*, 2025 WL 1009035, at *10 ("To argue that the IAF remains functioning when it has one employee, one grant, and little else is comically difficult to believe.").  Aviel is no mere employee: she is the inferior officer legally charged with leading the IAF; thus, "her role is inextricably intertwined with the organization's survival." *Id*. at *11.

As for the public interest, Defendants give that important factor short shrift as well.  Indeed, the term "public interest" appears nowhere in Defendants' motion, save a recitation of the stay factors (presumably Defendants combine public interest with its short assessment of harm to the government, discussed above).  Mot. 5.  But the public interest weighs heavily in favor of "having governmental agencies abide by the federal laws that govern their existence and operations." *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).  What's more, Defendants' actions to destroy the IAF also contradict the clear statutory prescription against using any IAF funds to "expand, eliminate, consolidate, or downsize" the agency without "prior consultation . . . with the appropriate congressional committees" and "a detailed justification for any proposed action."  138 Stat. at 843-

21

44.  "There is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters*, 838 F.3d at 12.

## CONCLUSION

Appellants' motion should be denied.

April 14, 2025                                Respectfully submitted,

                                             */s/ Aaron S.J. Zelinsky*
                                             AARON S.J. ZELINSKY
                                                  *Counsel of Record*
                                             ZUCKERMAN SPAEDER. LLP
                                             100 East Pratt Street, Suite 2440
                                             Baltimore, MD 21202
                                             Telephone:  (410) 332-0444
                                             Fax:  (410) 659-0436

                                             AARON CHOU (*admission pending*)
                                             ZUCKERMAN SPAEDER. LLP
                                             2100 L Street NW, Suite 400
                                             Washington, DC 20037
                                             Telephone:  (202) 778-1800
                                             Fax:  (202) 822-8106

                                             *Counsel for Appellee*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the applicable type-volume limitation set forth in Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,198 words, excluding the portions of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(f).

I further certify that this brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared using Microsoft Word Office in a proportionally spaced typeface (Times New Roman, 14 point).

/s/ *Aaron S.J. Zelinsky*
Aaron S. J. Zelinsky

## CERTIFICATE OF SERVICE

I hereby certify that, on April 14, 2025, I caused to be filed electronically the foregoing joint brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ *Aaron S.J. Zelinsky*
Aaron S.J. Zelinsky