# No. 25-5105

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

SARA AVIEL,

    Plaintiff-Appellee,

v.

SERGIO GOR, in his official capacity as Director of the White House Presidential Personnel Office, et al.,

    Defendants-Appellants.

On Appeal from the United States District Court
for the District of Columbia

**REPLY IN SUPPORT OF EMERGENCY MOTION FOR A STAY PENDING APPEAL**

YAAKOV M. ROTH
 *Acting Assistant Attorney General*

ERIC D. MCARTHUR
 *Deputy Assistant Attorney General*

MARK R. FREEMAN
DAVID L. PETERS
COURTNEY E. ALBINI
 *Attorneys, Appellate Staff*
 *Civil Division*
 *U.S. Department of Justice*
 *950 Pennsylvania Avenue NW*
 *Washington, DC 20530*
 *(202) 598-6735*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

ARGUMENT .......................................................................................................... 2

    A.    The Government Is Likely To Prevail On The Merits ................. 2

        1.    The Constitution empowers the President to designate acting Board members ...................................... 3

        2.    If the President cannot appoint acting Board members, the President must have the authority to remove plaintiff directly .................................................... 7

        3.    The district court lacked authority to issue its reinstatement order ......................................................... 8

        4.    Plaintiff cannot show irreparable injury ........................ 10

    B.    The Remaining Factors Favor A Stay. ....................................... 11

CONCLUSION ..................................................................................................... 13

CERTIFICATE OF COMPLIANCE

# INTRODUCTION

Plaintiff's opposition (Opp.) underscores the grave harm the district court's order imposes on our constitutional structure. Plaintiff acknowledges that as a result of that order, she is now the ranking official at the Inter-American Foundation (Foundation) and is exercising quintessentially executive authority by directing the agency's operations. She is doing so outside the President's supervision and control; in fact, she even highlights her intent to lead the organization in a matter contrary to the President's more limited view of the Foundation's proper scope of operations. What's more, plaintiff maintains that the President has no ability to remove her—and, by extension, to direct the Foundation's operations—unless and until the Senate confirms the President's new nominees to the Foundation's Board. That untenable outcome contravenes core Article II principles of legitimacy and accountability reflected in "the clear and effective chain of command down from the President." *United States v. Arthrex, Inc.*, 594 U.S. 1, 11 (2021) (quotation omitted).

Plaintiff's attempts to defend the district court's extraordinary order are unavailing. Plaintiff ignores that longstanding authority recognizes the President's ability to designate acting officials to temporarily supervise executive agencies, which is precisely what the President did here. Plaintiff,

moreover, misunderstands the Federal Vacancies Reform Act of 1998 (FVRA), 5 U.S.C. § 3345 *et seq.*, in suggesting that the express exemption from the statute's coverage for institutions like the Foundation renders the President powerless to appoint acting Board members. In any case, were plaintiff correct that the President is impotent in this respect, the Constitution would require that he have the alternative authority to remove plaintiff directly. Plaintiff further errs in asserting that the court's remedial authority permitted her reinstatement as the Foundation's president and that she could leverage her disagreement with the President over the Foundation's future to establish irreparable harm. And finally, plaintiff is wrong that the equities weigh in her favor; they weigh in favor of an immediate stay.

## ARGUMENT

**A.    The Government Is Likely To Prevail On The Merits**

As the stay motion explains, Mot. 5-6, the district court's four errors act in combination to produce the constitutionally intolerable result that an official is authorized to exercise executive power outside the President's supervision. Plaintiff never meaningfully engages with this point, addressing the identified errors individually, without reckoning with the implications of their aggregate impact. This failure is alone reason to grant

2

a stay. In any case, plaintiff's defenses of the individual errors are unavailing.

### 1. The Constitution empowers the President to designate acting Board members

Plaintiff repeats the district court's fundamental error in asserting that the President lacks authority to designate acting members to the Foundation's Board. Opp. 10-14. As the government explained, Mot. 8-12, and plaintiff concedes, Opp. 11, Article II has long been understood by Presidents of both parties to authorize the designation of acting officials to supervise executive agencies pending the Senate's confirmation of the President's nominees. *See, e.g.*, *Authority of the President to Remove the Staff Director of the Civil Rights Commission and Appoint an Acting Staff Director*, 25 Op. O.L.C. 103, 103 (2001); *Power of the President to Designate Acting Member of the Federal Home Loan Bank Board*, 1 Op. O.L.C. 150, 150 (1977). The authority flows from the President's core Article II responsibilities to take care that the laws be executed and to maintain accountability for officials acting on the President's behalf. The President properly exercised that authority here to designate Pete Marocco as an acting member and chairman of the Board.

As this case aptly demonstrates, the President's authority to make such designations is readily susceptible to a "coherent limiting principle."

3

Opp. 10. Among other things, a temporary designation "may be subject to … challenge absent the submission of a nomination for that office prior to or within a reasonable time after the designation of the acting member." *Home Loan Bank Board*, 1 Op. O.L.C. at 150. Indeed, that is the principle this Court recognized in *Williams v. Phillips*, 482 F.2d 669, 670 (D.C. Cir. 1973). The President satisfied that requirement here by submitting nominations within two weeks of the removal of the last Senate-confirmed Board member. Accordingly, plaintiff is simply wrong that the President is claiming "unbridled authority to fill any principal vacancy with an acting official … without ever needing to seek the advice and consent of the Senate." Opp. 10.

Plaintiff is also wrong that the FVRA limits the President's authority to designate acting Board members. Because the authority to designate acting officials inheres in Article II, the FVRA is "not a source, but rather a regulation of that power," *Home Loan Bank Board*, Op. O.L.C. at 151. The FVRA imposes no relevant limitation here because, as all agree, the statute expressly exempts entities like the Foundation from its requirements. 5 U.S.C. § 3349c. Importantly, the carve-out includes the FVRA's provision— set out in § 3347—making the statute the "exclusive means" for the appointment of acting officials in some circumstances. *See id*. § 3349c

4

(specifying that "Sections 3345 *through* 3349b shall not apply to" entities including the Foundation (emphasis added)). It also includes the FVRA's nullification provision set out in § 3348(d)(1). Section 3349c's express carve-out thus makes clear that the FVRA's restrictions do not apply to the Foundation and, by extension, do not limit the President's authority to appoint acting Board members.

Plaintiff's misreading of the FVRA also infects her attempt to distinguish *Williams*, in which this Court pointedly declined to embrace the same narrow view of presidential authority now proffered by plaintiff and the district court. Plaintiff suggests that the decision has no application here because the then-existing Vacancies Act lacked an equivalent to § 3347's exclusivity provision. Opp. 13. But as explained, Congress provided that § 3347 "shall not apply to" the Foundation. 5 U.S.C. § 3349c. Accordingly, the Court's observation in *Williams* regarding the President's "implied power, in the absence of limiting legislation … to appoint an acting official for a reasonable period of time" applies with equal force here. 482 F.2d at 670.

Finally, plaintiff errs in arguing that no Article II problem exists because the President has "a clear constitutional path to fire Aviel" through "appoint[ing] and confirm[ing] Board members." Opp. 2. Plaintiff is

5

exercising core executive authority outside the President's supervision and control during the indefinite period while those nominees are pending. Plaintiff is "no mere employee," Opp. 21, but an officer whose exercise of "executive power on behalf of the President in the name of the United States" acquires "its legitimacy and accountability to the public through a clear and effective chain of command down from the President," *United States v. Arthrex, Inc.*, 594 U.S. 1, 11 (2021) (quotation omitted). Plaintiff's reinstatement to a role outside the President's control eviscerates that chain of command, and it robs any action she or the Foundation takes of legitimacy and accountability to the public.

    Nor is the problem one "of [the President] own making" simply because he elected to remove the prior Senate-approved Board members who in turn could have removed plaintiff. Opp. 2. Plaintiff and the courts cannot superintend the President's lawful exercise of his removal power over principal officers in furtherance of "his own constitutional duty of seeing that the laws be faithfully executed." *Myers v. United States*, 272 U.S. 52, 135 (1926). That is particularly true here, as the President removed the Board members to ensure "align[ment] with President Trump's vision" for the Foundation. Dkt. 1 at 14. Moreover, plaintiff's suggestion that the President somehow relinquished his oversight powers misunderstands that

6

overseeing the exercise of executive power is not merely the President's "power," but also his "responsibility." *Harris v. Bessent,* No. 25-5055, 2025 WL 1021435, at *3 (D.C. Cir. Apr. 7, 2025) (Rao, J., dissenting). Removing the Board did not abrogate this duty.

### 2. If the President cannot appoint acting Board members, the President must have the authority to remove plaintiff directly

As explained, the President properly exercised his Article II authority to designate an acting Board, which then removed plaintiff at the President's direction. But if the President lacks such authority, Article II requires that the President must have the authority to remove the Foundation's president directly in order to supervise those who wield executive power on his behalf. Otherwise, plaintiff's removal would first require "appoint[ing] and confirm[ing] Board members," Opp. 2, providing the Senate an effective veto over the "President's power to remove—and thus supervise—those who wield executive power on his behalf," which is precisely the type of infringement on Article II that the Supreme Court rejected "in the landmark decision [of] *Myers.*" *Seila Law LLC* v. *CFPB*, 591 U.S. 197, 204 (2020); *Myers*, 272 U.S. at 16 (holding that Congress has no "power to remove or the right to participate in the exercise of that power").

7

Rather than meaningfully engage with these principles, plaintiff focuses on a question of timing, arguing that the President improperly fired her on February 26—*i.e.*, prior to the designation of an acting Board member. Opp. 5-7. Plaintiff's own evidence, however, indicates that she "had been terminated on February 28" once Marocco had been designated. Dkt. 22 at 8. In any event, the timing question obscures the relevant point. Once the President lawfully removed the Board, Article II dictates that the President must be able to remove plaintiff either directly or by directing the actions of the acting Board. *See Seila Law*, 591 U.S. at 204. Accordingly, even if plaintiff were correct on the timing question, it would not justify a preliminary injunction that bars the "Defendants" (including the President) "from removing Sara Aviel … absent a decision by a lawfully constituted Board." Dkt. 23 at 1.

### 3. The district court lacked authority to issue its reinstatement order

As explained, Mot. 20-22, an injunction ordering reinstatement also violates Article II and exceeds federal courts' equitable powers. That is why, as members of this Court have recently explained, reinstatement of lawfully removed officers "put[s] the courts on a collision course with the President over his exercise of core executive power." *Harris*, 2025 WL 1021435, at *2

8

(Rao, J. dissenting); *see Dellinger v. Bessent,* No. 25-5028, 2025 WL 559669, at *12 (D.C. Cir. Feb. 15, 2025) (Katsas, J., dissenting) (similar).

It makes no difference to the remedial analysis that plaintiff is an inferior, rather than a principal, officer. *Contra* Opp. 16. To reiterate, plaintiff "is no mere employee"; she is an executive "officer legally charged with leading" an executive agency. Opp. 21. And "[t]he lesson from history is clear: Federal courts have no equitable authority to enjoin the removal or to mandate the reinstatement of executive officers"—full stop. *Harris*, 2025 WL 1021435, at *5 (Rao, J., dissenting). Accordingly, the well-established principles recognizing the limits on courts' authority to enjoin the removal of an executive officer apply with equal force here.

Plaintiff invokes this Court's decisions in *Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996), and *Severino v. Biden*, 71 F.4th 1038 (D.C. Cir. 2023). Opp. 17. But in neither case did this Court review, much less sustain, an order like the one presented here. Rather, the Court in those cases considered only its jurisdiction over an official's challenge to his removal. At most, those cases can be read to stand for the proposition that equitable relief might be available to require a subordinate officer to allow a plaintiff to exercise some of the privileges of the office such as by "including [him] in Board meetings," or "giving him access to his former office." *Swan*, 100

9

F.3d at 980; *see also Severino*, 71 F.4th at 1043. The order issued by the district court here goes well beyond such *de facto* relief; it puts plaintiff back in her executive office and orders that she shall continue to serve as the *de jure* ranking official unless and until the Senate confirms the President's new nominees to the Foundation's Board.

### 4. Plaintiff cannot show irreparable injury

The district court independently erred because plaintiff failed to show irreparable harm. Like the district court, plaintiff erroneously conflates what she views as harm to the Foundation with harm to herself. The only harm *plaintiff* purportedly suffered was a loss of employment and salary, which ordinarily do not amount to irreparable injury, "however severely they may affect a particular individual," *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974); *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008) (explaining that a plaintiff must establish "that *he* is likely to suffer irreparable harm in the absence of preliminary relief" (emphasis added)).

Plaintiff nonetheless asserts that she is irreparably harmed because she has been deprived of the ability to carry out her "statutory right to function." Opp. 21. But a public official's "loss of political power" does not amount to a judicially cognizable harm. *Raines v. Byrd*, 521 U.S. 811, 820-21 (1997). The notion that public officials "have a separate private right,

10

akin to a property interest in the powers of their offices" is "alien to the concept of a republican form of government." *Barnes v. Kline*, 759 F.2d 21, 50 (D.C. Cir. 1984) (Bork., J., dissenting). A subordinate officeholder has no constitutional claim to an indefinite property right in a position. *See Harris v. Bessent,* No. 25-5037, 2025 WL 980278, at *6 (D.C. Cir. Mar. 28, 2025) (Walker, J., concurring) (discussing George Washington-era practice of interpreting officer commissions and removals to "depend on the pleasure of the Executive power"). The President's choice, moreover, of whom to appoint to fill executive offices goes to the core of his executive discretion. Individuals have no right to be appointed or nominated by the President to carry out the executive power exclusively vested in him by the Constitution. U.S. Const. art. II, § 1. Simply put, executive power belongs to the President, not to plaintiff. Plaintiff's contrary assumption highlights the constitutional defects in her suit.

### B. The Remaining Factors Favor A Stay

The Executive will suffer irreparable injury absent a stay because "it is impossible to unwind the days during which a President is directed to recognize and work with" an executive officer wielding authority whom the President has directed be removed. *Dellinger v. Bessent*, No. 25-5052, 2025 WL 887518, at *3 (D.C. Cir. Mar. 10, 2025) (quotation and alteration

11

omitted).[1] The "relative importance" of the Foundation's functions "go[] to the extent—not the character—of the President's injury." *Id.* By contrast, plaintiff "would likely be entitled to backpay if [she] were to prevail on appeal," *id.*, at *4, which would address the only judicially cognizable claim of harm that she asserts.

Lastly, the public interest cuts against plaintiff. Judicial intervention has cast a cloud on the lawfulness of the Foundations' actions, left the President and Senate uncertain about whether and when they may install a new Board member to succeed plaintiff, and undermined "the steady administration of the laws" that Article II seeks to secure. *Seila Law*, 591 U.S. at 223 (quotation omitted). At a minimum, the factor "does not weigh in [plaintiff's] favor" when "it is not clear how" the Court can balance plaintiff's "asserted public interest against the public interest asserted by the rest of the executive branch." *Dellinger*, 2025 WL 887518, at *4.

---

[1] Plaintiff's assertion that the logic of *Dellinger* does not apply here because she is an inferior officer is wrong. *Supra* p.9. Indeed, this case is in some ways more egregious because it appears that plaintiff is wholly insulated from removal—even for good cause—unless the Senate confirms the President's Board nominees.

12

## CONCLUSION

This Court should issue an immediate administrative stay as well as a stay of the district court's order pending appeal.

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney General*
ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*
MARK R. FREEMAN
*/s/ David L. Peters*
DAVID L. PETERS
COURTNEY E. ALBINI
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 598-6735*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,599 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Georgia, a proportionally spaced typeface.

*/s/ David L. Peters*
David L. Peters